IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEBORAH K. HEVERLY and :
JOHN SIMCOX, : Case No.4:05-1370
         Plaintiffs :
          : Judge Jones
    v :
          :
STEVE SIMCOX and TIMOTHY :
EILER, :
         Defendants :

## MEMORANDUM AND ORDER

## October 11, 2006

Pending before the Court is Defendant Steve Simcox's ("Defendant Simcox") Motion for Partial Summary Judgment and Trooper Timothy Eiler's ("Defendant Eiler") Motion for Summary Judgment ("the Motion")(doc. 20) filed on August 7, 2006.

Federal question jurisdiction is proper pursuant to 28 U.S.C. § 1331. Pendent jurisdiction over Pennsylvania state law claims is proper pursuant to 28 U.S.C. § 1367(c). For the reasons that follow, the Motion will be granted.

## PROCEDURAL HISTORY:

On July 7, 2005, the Plaintiffs Deborah K. Heverly ("Heverly") and John Simcox ("Plaintiff Simcox") filed a complaint in the United States District Court

for the Middle District of Pennsylvania against the above-referenced Defendants. (Rec. Doc. 1).  On September 14, 2005, the Defendants answered the complaint. (Rec. Doc. 7).

In Count One of the complaint, Heverly claims the Defendants violated her rights under the Fourth Amendment to the United States Constitution.  Heverly also asserts supplemental state claims of assault, intentional infliction of emotional distress, and malicious prosecution.  Count Two of the complaint pertains to Plaintiff Simcox's claims, which mirror Heverly's exact claims.

On August 7, 2006, the Defendants filed the instant Motion (doc. 20) with supporting brief and statement of facts.  (Rec. Docs. 21 and 22).  On August 29, 2006, Plaintiffs filed a brief in opposition to the Motion with counterstatement of material facts.  (Rec. Docs. 27 and 28).  On September 12, 2006, the Defendants filed a reply brief.  Accordingly, the Motion has been fully briefed and is therefore ripe for our review.

**STANDARD OF REVIEW:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED .R. CIV. .P.  56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of

showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357

(3d Cir. 1992).  Summary judgment should not be granted when there is a

disagreement about the facts or the proper inferences which a fact finder could

draw from them.  See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d

Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a

genuine issue of material fact.  Celotex Corporation v. Catrett, 477 U.S. 317, 323

(1986).  This may be met by the moving party pointing out to the court that there is

an absence of evidence to support an essential element as to which the non-moving

party will bear the burden of proof at trial.  Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is

made and properly supported, the non-moving party must then show by affidavits,

pleadings, depositions, answers to interrogatories, and admissions on file, that

there is a genuine issue for trial.  Fed.R.Civ.P. 56(e).  The United States Supreme

Court has commented that this requirement is tantamount to the non-moving party

making a sufficient showing as to the essential elements of their case that a

reasonable jury could find in its favor.  Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon

conclusory allegations in its pleadings or in memoranda and briefs to establish a

genuine issue of material fact." <u>Pastore v. Bell Tel. Co. of Pa.</u>, 24 F.3d 508, 511

(3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the

light most favorable to the non-moving party, and where the non-moving party's

evidence contradicts the movant's, then the non-movant's must be taken as true."

<u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir.

1992), <u>cert. denied</u>, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)(emphasis in original).  "As to

materiality, the substantive law will identify which facts are material." <u>Id</u>. at 248.

A dispute is considered to be genuine only if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." <u>Id</u>.

## STATEMENT OF RELEVANT FACTS:

Plaintiffs Heverly and Simcox are brother and sister residing in Mill Hall,

Pennsylvania. (Rec. Doc. 22 at ¶1).[1]  The Plaintiffs are related to the Defendant

Simcox as the Defendant Simcox is the son of the Plaintiffs' father's cousin. (Rec.

Doc. 22 at ¶2).  Defendant Simcox is a deputy for the Pennsylvania Game

---

[1] To the extent that the facts are not disputed by the parties, we shall, for the sake of
brevity, only cite to the Defendants' statement of facts.

Commission.  (Rec. Doc. 22 at ¶3).  There has been ongoing animosity between the Plaintiffs' family and Defendant Simcox's family concerning a property line the two families share.  (Rec. Doc. 22 at ¶4).  Plaintiffs assert that it is their theory that this animosity resulted in Defendant Simcox's actions that form the basis of the instant action.  (Rec. Doc. 28 at ¶4).

On or about October 15, 2003, Plaintiff Simcox was alone in a tree stand bow hunting when a buck approximately forty yards away came towards his position.  (Rec. Doc. 22 at ¶5).  Defendant Simcox, wearing an orange vest and regular clothing, was in the area and located a distance away from Plaintiff Simcox.  (Rec. Doc. 22 at ¶6).  Plaintiff Simcox believes that Defendant Simcox may have been squirrel hunting at that time.  (Rec. Doc. 22 at ¶7).  Although the two did not speak to each other or make eye contact, Defendant Simcox was looking in Plaintiff Simcox's direction and Defendant Simcox shot his shotgun in the air three times, which scared away the buck.  (Rec. Doc. 22 at ¶8-9).

On November 16, 2003, the Plaintiffs along with other family members were posting signs on a new property line which Plaintiffs' family claimed they owned.  (Rec. Doc. 22 at ¶10).  Plaintiffs allege that a recent survey had identify the property line as theirs.  (Rec. Doc. 28 at ¶10).  Plaintiffs were aware that the property boundary was in dispute because at the time of the survey, Defendant

Simcox and his family confronted surveyors and told them to leave their property. (Rec. Doc. 22 at ¶11).

The families confronted each other during the sign posting, which escalated into an argument and shouting match, with everyone but Heverly's seven year old son cursing at each other.  (Rec. Doc. 22 at ¶12).  During the argument, Defendant Simcox did not show his badge or threaten to issue any citations.  (Rec. Doc. 22 at ¶13).  Defendant Simcox, who was wearing regular clothing, warned Plaintiff Simcox to "watch his back" and Plaintiff Simcox asked him, "All right, Mr. Deputy Game Commissioner, is that a threat?"  Defendant Simcox replied, "I'm not in uniform so right now I'm not acting as a Game Commissioner."  (Rec. Doc. 22 at ¶14-15).

On December 2, 2003, the Plaintiffs went hunting.  Heverly arrived at her hunting spot around 8:00 a.m.  (Rec. Doc. 22 at ¶16-17).  Between 11:30 and noon, Heverly saw Defendant Simcox dressed in full camouflage behind a tree, approximately thirty feet behind her.  Heverly could only see half of Defendant Simcox's body and could not tell if he had a weapon with him.  (Rec. Doc. 22 at ¶18-19).  At 1:30 p.m., Heverly looked back and saw that Defendant Simcox was no longer there.  (Rec. Doc. 22 at ¶20).[2]  The following day, while Plaintiffs were

_____

[2] During this time both Heverly and Defendant Simcox were on state property.  (Rec. Doc. 22 at ¶21).  The two did not converse and Heverly claims not to have been bothered by

hunting, Defendant Simcox, wearing camouflage, set up fifty yards behind Plaintiff Simcox.  (Rec. Doc. 22 at ¶24).  Plaintiff Simcox could not tell if Defendant Simcox was armed or what he was doing.  (Rec. Doc. 22 at ¶25).[3]

On December 5, 2003, Plaintiffs again went out hunting.  Plaintiffs allege that Defendant Simcox, accompanied by his son, ran after them and stopped them as they attempted to go to their hunting stops, but they were not hunting at the point in time when stopped by Defendant Simcox.  (Rec. Docs. 22 at ¶¶28-29; 28 at ¶28).  Plaintiffs allege that they were on their own property when Defendant Simcox first yelled at them to stop.  Plaintiffs allege they crossed directly from their property onto state land ground when Defendant Simcox yelled at them a second time.  Plaintiffs allege they were at no time on the land owned by Defendant Simcox or his family during this exchange.  (Rec. Doc. 28 at ¶29).

Initially, Defendant Simcox did not say anything to Heverly, but told Plaintiff Simcox to stop and showed him his badge.  (Rec. Doc. 22 at ¶30).  Defendant Simcox, dressed in camouflage and not an official uniform, told

---

Defendant Simcox's presence in the area.  (Rec. Doc. 22 at ¶22).  Heverly claims that Defendant Simcox followed her into the woods because she saw footprints following hers with the same treads as his boots (although she does not know his shoe size).  (Rec. Doc. 22 at ¶23).

[3] No words were exchanged and Defendant Simcox did not make any distracting noises or shoot into the air at this time. The parties were again on state property.  (Rec. Doc. 22 at ¶26-27).

Plaintiff Simcox that they were hunting in a safety zone and went to write down Plaintiff Simcox's information.[4]   (Rec. Doc. 22 at ¶31).  At this point, Heverly walked over to Defendant Simcox, who was kneeling on one knee writing down the information, and told him that the only reason why Defendant Simcox was "doing this" was because of the property dispute.  Defendant Simcox told Heverly that this was none of her business and she just needed to say out of this.  Defendant Simcox began yelling at Heverly and pointing his finger in her face, while he was still down on one knee.  Defendant Simcox then stood up and approached Heverly while the two of them yelled at one another.  While yelling, Defendant Simcox put his finger in Heverly's face a second time, whereupon she grabbed his finger and moved it away.  (Rec. Doc. 22 at ¶32-37).

At this point, Defendant Simcox lunged forward and knocked Heverly to the ground. (Rec. Doc. 22 at ¶38).  Heverly alleges that she fell upon her rifle, which was slung over her shoulder.  (Rec. Doc. 28 at ¶38). While the two were on the ground, Plaintiff Simcox told Defendant Simcox that he was going to shoot him if he did not get off of Heverly.  (Rec. Doc. 22 at ¶39).  Defendant Simcox then got up and pulled Heverly up off the ground.  Heverly never saw Defendant Simcox's badge during this incident, but claims that he took his badge out and identified

---

[4] Again, Plaintiffs allege that they were not actually hunting when stopped by Defendant Simcox, but simply walking to their hunting destination.  (Rec. Doc. 28 at ¶31).

himself as a Pennsylvania Game Commission officer.  (Rec. Docs. 22 at ¶42; 28 at ¶42).  Following the incident, Heverly stormed off and called her mother and told her to call the police.  (Rec. Doc. 22 at ¶43).

Defendant Eiler, a Pennsylvania State Trooper, accompanied by another trooper, arrived on the scene approximately fifty minutes after the call came in. Members of the Game Commission also arrived after the scene after Defendant Simcox called them.  (Rec. Doc. 22 at ¶44-45).  Members of the Game Commission measured where the Plaintiffs were located and confirmed that they were in a safety zone.[5]  (Rec. Doc. 22 at ¶46).

Defendant Eiler interviewed Heverly first, followed by Plaintiff Simcox. (Rec. Doc. 22 at ¶48).  Heverly alleges that Defendant Eiler attempted to discourage her from pursuing any charges against Defendant Simcox.   Heverly alleges that Defendant Eiler asked her numerous times if she was sure she wanted to press charges "because it didn't look good because he was a Deputy Game Commissioner."   Heverly alleges that Defendant Eiler did not allow her to show him where the incident took place.  (Rec. Doc. 28 at ¶48).

Defendant Eiler then interviewed Defendant Simcox and his son.  Defendant Simcox's son, William Simcox, told Defendant Eiler that Heverly attacked his

---

[5] Once again, Plaintiffs deny that they were hunting in this area, but merely passing through.  (Rec. Doc. 28 at ¶46).

father while he was writing down the information, and that he thought she punched him.[6] (Rec. Doc. 22 at ¶50-51).

Heverly alleges that as a result of the incident she went to Lock Haven Emergency Room for treatment.  The hospital found her finger to be "jammed" and that her eighth rib was fractured.  Heverly was treated by Cortisone shots and went for physical therapy for back pain.  Heverly alleges that prior to this incident she never had back problems other than an occasional pulled muscle.  Heverly alleges that she continues to take medicine for chronic pain.  (Rec. Doc. 28 at ¶31).  Defendant Eiler took notice that Defendant Simcox's mouth was swollen.  (Rec. Doc. 22 at ¶52).

After Defendant Eiler conducted the interviews, he met with Clinton County District Attorney to discuss the matter and to determine what criminal charges should be filed.  Defendant Eiler alleges that the District Attorney told him what charges to file against the Plaintiffs.  (Rec. Doc. 22 at ¶54).  Heverly was charged with assaulting an officer, resisting or interference with an officer and hunting in a safety zone.  (Rec. Doc. 22 at ¶56).  Heverly ultimately pled guilty to hunting in a safety zone and harassment.  (Rec. Doc. 22 at ¶57).  Heverly alleges that she pled guilty to harassment because she did in fact yell and swear at Defendant Simcox.

---

[6] Plaintiffs allege that these statements are untruthful.

She alleges that she pled guilty to hunting in a safety zone because it was her impression that it would be cheaper than pleading not guilty and she thought she would not lose her hunting license.  (Rec.  Doc. 28 at ¶57).  Plaintiff Simcox was charged with terroristic threats, assault, aggravated assault and hunting in a safety zone.  He ultimately pled guilty to terroristic threats.[7]  (Rec. Doc. 22 at ¶57).

**DISCUSSION**:

In the Motion, the Defendants seek summary judgment in favor of Defendant Eiler with respect to all claims of both Plaintiffs.  Defendant Simcox seeks summary judgment with respect to all claims of Plaintiff Simcox and the state law claims of Plaintiff Heverly.  Defendant Eiler concedes that genuine issues of material fact remain as to Plaintiff Heverly's excessive force claim against Defendant Simcox, and accordingly her excessive force claim is not subject to the Motion.

**A.**      **Plaintiff Simcox's Illegal Seizure/False Arrest Claim Against Defendant Simcox**

Plaintiff Simcox alleges that Defendant Simcox, while acting under color of law, illegally seized Plaintiff Simcox's person on December 5, 2003 in violation of

---

[7] Plaintiff Simcox alleges his plea of guilty was made pursuant to a plea bargain.

his rights under the Fourth Amendment to the United States Constitution .[8]

Although not explicitly stated in the complaint, Plaintiff Simcox ostensibly brings

his claims for deprivation of constitutional rights under 42 U.S.C. § 1983.[9]

In order for Plaintiff Simcox to establish a constitutional claim against

Defendant Simcox, he must establish that Defendant Simcox was acting under

color of state law when the alleged violation occurred.  To establish a §1983 claim,

a plaintiff must demonstrate that: (1) the challenged conduct was committed by a

person acting under color of state law, and (2) the conduct deprived the plaintiff of

a right, privilege or immunity secured by the Constitution or federal law.

An individual acts "under color of state law," if he exercised power

possessed by virtue of state law and made possible only because the wrongdoer is

clothed with the authority of state law.  See Barna v. City of Perth Amboy, 42 F.3d

809, 815-816 (3d Cir. 1994)(citations omitted); see also Mark v. Borough of

Hatboro, 51 F.3d 1137, 1150-1151 (3d Cir. 1995).  "Under color of law means

under 'pretense' of law.  Thus, acts of officers in the ambit of their personal

---

[8] Heverly alleges that Defendant Simcox seized her person and committed excessive force actions against her in violation of her rights under the Fourth Amendment of the United States Constitution.  Inasmuch as Defendant Simcox has conceded that Heverly's excessive force claim survives the instant Motion, we shall not discuss the merits of Heverly's claims against Defendant Simcox.

[9] Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266 (1994).

pursuits are plainly excluded.  Acts of officers who undertake to perform their

official duties are included whether they hew the line of their authority or overstep

it."  Mark, 51 F.3d at 1151 (quoting Screws v. United States, 325 U.S. 91, 111

(1945).  "If an individual is possessed of state authority and purports to act under

that authority, his action is state action.  It is irrelevant that he might have taken the

same action had he acted in a purely private capacity."  Barna, 42 F.3d at 816

(citing Griffin v. Maryland, 378 U.S. 130 (1964)).

On December 5, 2003, upon stopping the Plaintiffs, Defendant Simcox

showed Plaintiff Simcox his badge, informed Plaintiff Simcox that he was hunting

in a safety zone and proceeded to write down Plaintiff Simcox's information.

Although Defendant Simcox was not clothed in his official uniform, it seems quite

apparent to the Court that he was acting in his capacity as a deputy game

commissioner.  He specifically showed Plaintiff Simcox his badge, which

identifies his position with the Pennsylvania Game Commission, and alerted

Plaintiff Simcox that he was in alleged violation of hunting regulations.  While

Plaintiff Simcox and Defendant Simcox may have "bad blood" towards each other,

Defendant Simcox clearly demonstrated that his conduct on December 5, 2003 was

under the authority of his position as a Pennsylvania deputy game commissioner.

As noted, Plaintiff Simcox alleges that Defendant Simcox violated his rights

under the Fourth Amendment of the United States Constitution because he was
illegally seized by Defendant Simcox on December 5, 2003.  The Fourth
Amendment governs seizures of a person and it is well-settled that whenever an
"officer accosts an individual and restrains his freedom to walk away, he has
'seized' that person."  Terry v. Ohio, 392 U.S. 1, 17 (1968).  Under Terry and
subsequent related cases, "an officer may, consistent with the Fourth Amendment,
conduct a brief, investigatory stop when the officer has reasonable, articulable
suspicion that criminal activity is afoot."  United States v. Valentine, 323 F.3d 350,
353 (3d Cir. 2000)(quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)).  The
reasonable, articulable suspicion standard is "less demanding than probable cause
and requires a showing considerably less than preponderance of the evidence."
United States v. Delfin-Colina, 2006 U.S. App. LEXIS 24046, *9 (3d Cir.
2006)(quoting Wardlow, 528 U.S. at 123).

Based upon the factual record before us, it is clear that Defendant Simcox,
acting in his official capacity as a deputy game commissioner did not violate
Plaintiff Simcox's Fourth Amendment rights when he stopped him on December 5,
2003.  Plaintiff Simcox admits that he and Heverly crossed into state game lands
when he was stopped by Defendant Simcox.  Although the Plaintiffs vehemently
deny that they were hunting when they were stopped and assert that they were

merely passing through the safety zone, we find that it was entirely reasonable for

Defendant Simcox to stop Plaintiff Simcox.  Although not expressly admitted, we

easily can infer that Plaintiff Simcox, in venturing to his hunting destination, was

armed with the instrumentalities for hunting, including dress and weapon.  It would

not be unreasonable for Defendant Simcox to stop Plaintiff Simcox to inquire as to

whether he was hunting in the safety zone.  As a result, the investigatory stop was

based on a reasonable suspicion that Plaintiff Simcox may have been violating the

law, despite the fact that he now proffers that he was not.   Accordingly, we cannot

find that Defendant Simcox violated Plaintiff Simcox's Fourth Amendment rights,

and we shall grant summary judgment on Plaintiff Simcox's constitutional claim in

favor of Defendant Simcox.

## B. Plaintiffs' Malicious Prosecution Claims Against Both Defendants

Plaintiffs allege that their Fourth Amendment rights to be free from

malicious prosecution were violated by the Defendants by virtue of the charges that

were lodged against Plaintiffs arising from the incidents of December 5, 2003.

To state a claim for malicious prosecution under 42 U.S.C. § 1983, a

plaintiff must establish the elements of the common law tort.  See Hilfirty v.

Shipman, 91 F.3d 573, 579 (3d Cir. 1996).  In Pennsylvania, a party bringing a

malicious prosecution claim must establish that (1) the defendants initiated the

criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3)

the proceeding was initiated without probable cause; and (4) the defendants acted

maliciously or for a purpose other than bringing the plaintiff to justice.  Id. (citing

Heafner v. Burkey, 534 Pa. 62 (1993)).   Following the Supreme Court's holding in

Albright v. Oliver, 510 U.S. 266 (1994), the Third Circuit required a plaintiff to

further establish "some deprivation consistent with the concept of 'seizure'" to

proceed on a malicious prosecution claim.   Gallo v. City of Philadelphia, 161 F.3d

217, 222 (3d Cir. 1998).   Further, some courts have "recognized that a §1983

malicious prosecution claim might be maintained against one who furnishes false

information to or concealed material information from prosecuting authorities."

Gallo, 161 F.3d at 220 n.2.[10]

In this matter, we conclude that Plaintiffs have not established a *prima facie*

case of malicious prosecution against either Defendant for the reasons that follow.

First, neither Defendant initiated the proceedings against the Plaintiffs.  The

charges were brought by the District Attorney.  While both Defendants supplied

the information that presumably formed the basis for the initiation of the charges,

neither Defendant formally instituted the charges.  While this might allow

Plaintiffs to argue that Defendants nonetheless provided false information to or

---

[10] It is upon this theory that Plaintiffs purport to state a claim against Defendant Simcox.

concealed information from the District Attorney, an analysis of the second, third, and fourth <u>Heafner</u> prongs demonstrates that they are fatal to their claims.

In that vein, we will initially note that the Plaintiffs cannot establish that the proceedings ended in their favor.  Criminal proceedings are terminated in favor of the accused by: (a) discharge by a magistrate at a preliminary hearing; or (b) the refusal of a grand jury to indict; or (c) the formal abandonment of the proceedings by the public prosecutor; or (d) the quashing of an indictment or information; or (e) an acquittal; or (f) a final order in favor of the accused by a trial or appellate court. <u>Hilfirty</u>, 91 F.3d at 579.  Plaintiffs both entered into negotiated guilty pleas to dispose of the charges against them.

Plaintiffs cite <u>Gallo</u>, asserting that they should be able to maintain their malicious prosecution claims despite their respective guilty pleas.  In <u>Gallo</u>, the plaintiff was charged with arson and other related charges.  The fire marshal's original report ruled the fire as accidental.  <u>Gallo</u>, 91 F.3d at 219.  After the fire marshal spoke with the insurance investigator, the fire marshal was pressured to and did in fact change his report to rule the fire an arson.  The fire marshal filed the revised report and took intentional steps to hide the original report.  <u>Id.</u> Gallo pled guilty to one count of making a false statement to obtain a loan and was acquitted of the remaining charges following trial.  Gallo thereafter brought malicious

17

prosecution claims for the arson charges of which he was acquitted.

Plaintiffs rely on <u>Gallo</u> for the proposition that they may maintain their malicious prosecution claims despite their guilty pleas.  However, Plaintiffs reliance on <u>Gallo</u> is misplaced.  Gallo brought his malicious prosecution claims for the arson charges of which as noted he was acquitted.  In contrast, Plaintiffs here were not affirmatively acquitted of the remainder of the charges against them, rather those charges were disposed by negotiated guilty pleas.  Accordingly, the criminal proceedings *did not* end in the Plaintiffs favor because they entered into guilty pleas.  The motivation behind their decisions to enter guilty pleas is of no moment to our analysis.

From a review of the pleadings, we might infer that Plaintiffs are attempting to parse out the charges against that were dismissed as a result of their plea bargains as the basis for their malicious prosecution claims.  However, and as noted, those charges were only dismissed against the Plaintiffs as a result of the negotiated plea agreements.  The benefit of Plaintiffs' bargain was accordingly the dismissal of the other charges, and we cannot find that dismissal of charges on those grounds forms the basis of a malicious prosecution claim.  To so hold would be contrary to logic and render Plaintiffs' plea agreements meaningless.  Indeed we believe that using charges dismissed in this fashion as the predicate for a malicious

18

prosecution claim is unprecedented.

Even assuming arguendo Plaintiffs could proceed with malicious prosecution claims on the dismissed charges, the third prong of Haefner is also fatal to Plaintiffs' claims.  Plaintiffs assert that the charges against them were brought without probable cause.  As noted,  Heverly was charged with assaulting an officer, resisting or interfering with an officer and hunting in a safety zone. Plaintiff Simcox was charged with terroristic threats, assault, aggravated assault and hunting in a safety zone.  Heverly admits that she yelled at Defendant Simcox and pushed his finger out of her face.  Plaintiff Simcox, while possessed of a weapon, told Defendant Simcox that he was going to shoot him if he did not get off of Heverly when they were struggling on the ground.  Further, after the incident, Game Commission officials took measurements and determined that Plaintiffs were in fact in a safety zone.  The existence of these admitted facts clearly forms the basis for probable cause and support the charges brought against the Plaintiffs in all respects.

Finally, the Plaintiffs have not established that either Defendant acted maliciously, and this also dooms their claims.  Although Plaintiffs allege that Defendant Simcox and Defendant Eiler were "law enforcement buddies," the two had not met prior to December 5, 2003.  Therefore, there is no indication that

19

Defendant Eiler pursued the charges against the Plaintiffs based upon anything

other than the factual panoply before him.  While Defendant Simcox may have had

an acrimonious relationship with the Plaintiffs, he was not, as aforementioned,

directly responsible for the lodging of charges against the Plaintiffs.

Accordingly, Plaintiffs have not established claims for malicious prosecution

against either of the Defendants and summary judgment on the Plaintiffs'

malicious prosecution claims will accordingly be entered in favor of the

Defendants.

### C.   Plaintiffs' Intentional Infliction of Emotional Distress Claims Against Defendant Simcox

Plaintiffs assert claims of intentional infliction of emotional distress

("IIED") against Defendant Simcox based upon the incident of December 5, 2003.

To establish a claim for IIED, a plaintiff must show that (1) the conduct of the

defendant was intentional and reckless; (2) the conduct was extreme and

outrageous; (3) the conduct caused emotional distress; and (4) the distress was

severe.  See Hoy v. Angelone, 554 Pa. 134 (1998).  A plaintiff must demonstrate

that the defendant's conduct was "so outrageous in character and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious and utterly intolerable in a civilized society."  Id. at 151.  "Cases which

have found a sufficient basis for a cause of action of intentional infliction of

emotional distress have had presented only the most egregious conduct."

Anderson v. Deluxe Homes of Pa., 131 F. Supp. 2d 637, 658 (M.D. Pa.

2001)(quoting Hoy, 554 Pa. at 151).

The Restatement (Second) of Torts § 46 recognizes that a family member

who is present at the time of the incident giving rise to the cause of action may

proceed with an IIED claim.  In such cases the actor must have knowledge that his

actions are substantially certain, or at least highly probable, to cause severe

emotional distress to the plaintiff.  See Restatement (Second) of Torts § 46,

comment L.

Heverly alleges she suffered extreme emotional distress resulting from the

December 5, 2003 incident.  Plaintiff Simcox alleges that he suffered extreme

emotional distress by witnessing the physical altercation between his sister and

Defendant Simcox.  However, as the case law indicates, Plaintiffs must establish

that Defendant Simcox's conduct was so far outside the bounds of decency to

support an IIED claim.  Plaintiff Simcox witnessed what can only be described as a

simple physical altercation between two related persons.  This incident does not in

our view bear the hallmarks of egregious conduct and clearly does not rise to the

high threshold set forth by Pennsylvania courts.  Accordingly, we will grant

summary judgment in favor of the Defendant Simcox on Plaintiffs' IIED claims.

### D.      Plaintiff Simcox's Assault Claim Against Defendant Simcox

Although not mentioned or argued in the Motion or the parties' briefs, Plaintiff Simcox also asserts a pendent state-law claim of assault against Defendant Simcox.[11]  However, as we are empowered to do, we shall undertake a *sua sponte* analysis to determine whether Plaintiff Simcox's claim as against Defendant Simcox survives summary judgment.

As provided by the Restatement (Second) of Torts § 21, to establish a claim for assault, a plaintiff must allege that the defendant acted intending to cause 'imminent apprehension of a harmful or offensive bodily contact,' and that such apprehension was experienced by the plaintiff.  See also Bryan v. Eerie County Office of Children & Youth, 2006 U.S. Dist. LEXIS 70856, *82 (W.D. Pa. 2006). Plaintiff Simcox has utterly failed to allege any facts to show that he was put in imminent apprehension of a harmful or offensive contact by Defendant Simcox. Accordingly, we shall grant summary judgment with respect to Plaintiff Simcox's assault claim in favor of Defendant Simcox.

### CONCLUSION:

For the foregoing reasons, the instant Motion (doc. 20) shall be granted.

---

[11] Inasmuch as Heverly's state-law assault claim is intertwined with an related to her §1983 excessive force claim, we shall not pass on the merits of her state-law assault claim in this Memorandum and Order.

Summary judgment is granted in favor of Defendant Simcox on Plaintiff Simcox's §1983 false arrest/illegal seizure claim and assault claim and on both Plaintiffs' malicious prosecution and IIED claims.  Summary judgment is granted in favor of Defendant Eiler on Plaintiffs' malicious prosecution claims.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  Defendant Simcox's Motion for Partial Summary Judgment and Trooper Eiler's Motion for Summary Judgment (doc. 20) are GRANTED.

2.  Judgment is granted in favor of Defendant Eiler with respect to Plaintiffs' malicious prosecution claims.

3.  Judgment is granted in favor of Defendant Simcox with respect to Plaintiff Simcox's false arrest/illegal seizure claim and assault claim.

4.  Judgment is granted in favor of Defendant Simcox with respect to Plaintiffs' IIED claims.

5.  The Clerk shall terminate Defendant Timothy Eiler as a party to this action.

6.  The Clerk shall terminate Plaintiff John Simcox as a party to this action.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge